UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEREK A. NKEMNJI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 25-cv-8712 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| NELNET, INC. and UNITED STATES ) | |
| DEPARTMENT OF EDUCATION, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Like many people in this country, Plaintiff Derek A. Nkemnji has a substantial amount of student loan debt—in his case, over $90,000. Debt of that magnitude can be a millstone around the neck of one's future. Mr. Nkemnji learned, evidently in classes he took *en route* to earning his MBA degree, about the concept of paying a debt with a bill of exchange. It is unsurprising and understandable, given what he believed the law to be, that Mr. Nkemnji then attempted to use this method of "payment" to essentially erase his student debt held by Defendant U.S. Department of Education ("the Department") and serviced by Defendant Nelnet, Inc. ("Nelnet").[1] When Nelnet and the Department then refused to honor his bill of exchange, Mr. Nkemnji sued, accusing Defendants of breach of contract and breach of fiduciary duty. Unfortunately for Mr. Nkemnji, his bill of exchange was not a valid method of payment, which means that his student loans have not been paid off.

---

[1] Nelnet objects that the proper defendant for this case is Nelnet Servicing, LLC, which is the entity that serviced Mr. Nkemnji's student loans. Dkt. 12 at *1 n.1. "Nelnet Servicing is wholly owned by Nelnet Diversified Solutions, LLC which itself is wholly owned by Nelnet, Inc." *Id.* However, for the purposes of adjudicating the instant motions, the Court will accept as true Mr. Nkemnji's plausibly pled allegations that his loan servicer was Nelnet, Inc. *See, e.g.*, dkt. 1 at *17 (ex. B) (email discussing Mr. Nkemnji's student loan which states "This email was sent by: Nelnet, Inc."); *see also* Section I.B, *infra*.

Before the Court are motions to dismiss [12, 29] filed respectively by Nelnet and by the Department. The Court grants both motions and dismisses Mr. Nkemnji's complaint with prejudice.

**BACKGROUND**

Unless otherwise indicated, the following facts are drawn from Mr. Nkemnji's complaint and are presumed true for the purpose of resolving the instant motions.

Mr. Nkemnji has entered into a loan agreement with the Department under the Higher Education Act of 1965 ("HEA"), 20 U.S.C. §§ 1001 *et seq*. Defendant Nelnet was the servicer of the loan. Mr. Nkemnji eventually amassed a total debt of at least $92,267.62. At oral argument, he represented that at least some of his loans were for the purpose of pursuing an MBA degree, which he successfully earned. Mr. Nkemnji also stated that, in one of his MBA classes, he learned about negotiable instruments and bills of exchange, as governed by the Uniform Commercial Code ("UCC"), Article 3. On April 4, 2025, Mr. Nkemnji sent a letter to Nelnet informing them that he was revoking the power of attorney that he believed had been established when he took out the loan. Two days later, Nelnet sent Mr. Nkemnji notice that payment on his student loans was 90 days past due.

On April 25, 2025, Mr. Nkemnji sent a second letter to Nelnet. In it, he claimed that "Nelnet, Inc. is now in default for failure to respond and perform upon receipt of Revocation of Power of Attorney." Dkt. 1 at *23 (ex. D). He also included a notarized document, which he titled a "bill of exchange," and which stated that it was "lawful money on demand" and that it was "drawn and presented as full settlement and discharge" of Mr. Nkemnji's total debt of $92,267.62. *Id.* at *27 (ex. D). The bill of exchange did not include any information about a bank account or other source of funds from which the $92,267 could be drawn. *Id.*

Over the next months, Mr. Nkemnji exchanged several letters with Nelnet and the Department. On June 3, 2025, Mr. Nkemnji sent to the Department a "Notice of Dishonor and Breach of Fiduciary Duty," which declared that the Department's "silence and failure to respond" to

Mr. Nkemnji's prior letters to Nelnet (including the bill of exchange) placed the Department in violation of the UCC, the Truth in Lending Act, the Fair Debt Collection Practices Act, and other laws. *Id.* at *112 (ex. M). On July 5, 2025, Nelnet sent Mr. Nkemnji notice that it had not received his six previous scheduled payments and that the account was now 180 days past due. *Id.* at *116 (ex. N). Consequently, Nelnet had reported his account as delinquent to credit reporting agencies. *Id.* Five days later, Nelnet sent Mr. Nkemnji another letter, informing him that it could not accept his bill of exchange, as it was not a valid form of payment. *Id.* at *118 (ex. O).

About two weeks later, on July 28, 2025, Mr. Nkemnji filed his complaint in the instant case, proceeding *pro se*. Dkt. 1 [hereinafter "Compl."]. On August 26, 2025, Nelnet filed a motion to dismiss that complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 11; *see also* dkt. 12 [hereinafter "Nelnet Br."]. The case was briefly stayed due to the government shutdown in Fall 2025. *See* dkt. 21. On December 2, 2025, after the government reopened, the Department filed its own motion to dismiss, also pursuant to Rules 12(b)(1) and 12(b)(6). Dkt. 28. The parties timely filed their respective response and reply briefs for the two motions, and then had brief oral arguments on February 3, 2026, after which the Court considered both motions to be ready for adjudication.

## LEGAL STANDARD

Both Nelnet and the Department have moved to dismiss Mr. Nkemnji's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under 12(b)(1) challenges a court's subject-matter jurisdiction. The plaintiff bears the burden of establishing the elements necessary for subject matter jurisdiction, including standing to seek relief. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021); *International Union of Operating Eng'rs v. Daley*, 983 F.3d 287, 294 (7th Cir. 2020).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive

– 3 –

a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In resolving motions under Rules 12(b)(1) and 12(b)(6), the Court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *Prairie Rivers Network v. Dynegy Midwest Generation*, LLC, 2 F.4th 1002, 1007 (7th Cir. 2021); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019).

## DISCUSSION

### I. Jurisdiction

#### A. Sovereign Immunity

Under the doctrine of sovereign immunity, a plaintiff may not sue the federal government (including federal agencies, such as the Department) unless the government has waived its immunity. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Here, the Department argues that Mr. Nkemnji's claims against the Department do not fall within any express or even implied waiver of sovereign immunity, and that they therefore must be dismissed because this Court has no jurisdiction to adjudicate them. Additionally, the Higher Education Act specifically prohibits "attachment, injunction, garnishment, or other similar process" against the Department. 20 U.S.C. § 1082(a)(2). The Department argues that the relief sought by Mr. Nkemnji (a declaration that his student loan debt is discharged and an injunction against collection) falls within the bounds of relief that the Higher Education Act specifically prohibits.

Mr. Nkemnji responds that the doctrine of sovereign immunity does not apply to *ultra vires* actions or to equitable remedies. Dkt. 32 at *4. However, he is mistaken on both counts. First, his

assessment of what constitutes an *ultra vires* act sweeps far too broadly. Mr. Nkemnji cites *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), to argue that, in essence, any act outside of an officer or agency's lawful authority is *ultra vires*. Dkt. 32 at *4. But that is not so, and, as the Department points out, it is not what *Larson* holds. Dkt. 36 at *2–3. *Larson* does not authorize suits against the United States or its agencies when an act is *ultra vires*; rather, it proposes (in dicta) that an individual officer may be held responsible, solely in his or her individual capacity, for an *ultra vires* act. 337 U.S. at 689–90. Moreover, an act does not become *ultra vires* merely because it may be illegal; rather, "a public official only acts *ultra vires* for purposes of sovereign immunity when he acts *without any authority whatsoever*." *Vill. of Orland Park v. Pritzker*, 475 F. Supp. 3d 866, 888 (N.D. Ill. 2020) (Wood, J.) (emphasis added) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11, 106–16 (1984)). Here, even if the Department acted incorrectly, it still acted within the scope of the Department's statutory authority, *see* 20 U.S.C. § 1082(a)(1), and therefore did not act *ultra vires*.

Second, Mr. Nkemnji does not identify any support for his claim that sovereign immunity does not apply to equitable remedies, nor does he meaningfully respond to the Department's argument that equitable relief against the Department is foreclosed by the Higher Education Act. Mr. Nkemnji claims that "Nothing in [20 U.S.C.] § 1082 bars a Court from acknowledging that legal tender has been refused in bad faith or that a fiduciary duty was breached under general law principles." Dkt. 32 at *5. However, the statute's plain text plainly forbids the injunctive relief that Mr. Nkemnji seeks. Additionally, Mr. Nkemnji's request that this Court declare that his debt has been discharged by his bill of exchange is coercive rather than declaratory in character because it seeks to force Nelnet and the Department to accept Mr. Nkemnji's bill of exchange as legal tender. *See Ulstein Maritime Ltd. v. United States*, 833 F2d 1052, 1055 (1st Cir. 1987) ("An injunction is a coercive order by a court directing a party to do or refrain from doing something, and applies to future actions. A declaratory judgment states the existing legal rights in a controversy, but does not, in itself, coerce any party or enjoin any

future action."). As such, it is more properly categorized as a forbidden request for injunctive relief rather than a possibly permissible request for declaratory relief. *See Riley*, 170 F3d at 1254 (section 1082's "anti-injunction bar cannot be skirted by the simple expedient of labeling an action that really seeks injunctive relief as an action for 'declaratory relief.'")

The Court agrees that the Department is protected from Mr. Nkemnji's suit under the doctrine of sovereign immunity. As such, this Court has no jurisdiction over those claims, which must be dismissed with prejudice.

### B. *Subject-Matter Jurisdiction Over the Claims against Nelnet*

In its motion to dismiss, Nelnet argues that Mr. Nkemnji has established neither federal question jurisdiction nor diversity jurisdiction. The Court agrees with respect to subject-matter jurisdiction. Although Nelnet is a federal loan servicer, which is regulated by laws such as the Fair Debt Collection Practices Act, Mr. Nkemnji's claims arise under the UCC, which is a matter of state law. *See* 810 ILCS Act 5. As such, there is no question of federal law presented by Mr. Nkemnji's complaint.

However, the Court believes that diversity jurisdiction likely exists because the amount in controversy ($92,267.62) is greater than $75,000, and because it appears that Nelnet is a citizen of Nebraska, or at least not a citizen of Illinois. *See* 28 U.S.C. § 1332(a). Nelnet argues that the amount in controversy is actually $0.00 because Mr. Nkemnji has not lost any money from Defendants' actions. Nelnet Br. *8–9. However, Mr. Nkemnji has alleged that Nelnet reported his account as delinquent to credit reporting agencies, which could potentially result in other damages. Compl. *116 (ex. N). At this juncture, the Court will not question Mr. Nkemnji's assessment of the amount in controversy unless it is patently implausible. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears… to a legal certainty that the claim is really for less than the

jurisdictional amount[.]" (internal quotation marks omitted)). Nelnet also argues that Mr. Nkemnji has not proven that complete diversity exists, because the proper defendant is Nelnet Servicing, LLC, and Mr. Nkemnji has not established the citizenship of each member of Nelnet Servicing, LLC. Nelnet Br. *8 n.3. However, Mr. Nkemnji has plausibly pled in his complaint that his loan was serviced by the named Defendant, Nelnet, Inc. His complaint includes emails responding to inquiries about his account that state "Nelnet is a Servicer to Federal Student Aid" and "This email was sent by: Nelnet, Inc." Compl. *17 (ex. B). The same emails identify Nelnet as being located in Nebraska. *Id.* And particularly given that Nelnet has not represented that it or any of its relevant entities are citizens of Illinois, *see generally* Nelnet Br; dkt. 20, the Court finds that Mr. Nkemnji has plausibly established that complete diversity, and therefore diversity jurisdiction, exists over his claims against Nelnet.

## II.     Failure to State a Claim

Mr. Nkemnji has established jurisdiction over his allegations against Nelnet. However, his complaint still must be dismissed, because he has not stated a legal claim against Nelnet (or, for that matter, against the Department).

Mr. Nkemnji claim that Nelnet breached a contract with him and also breached its fiduciary duty to him when it allegedly dishonored his bill of exchange. However, no such breach occurred. Despite Mr. Nkemnji's claims to the contrary, his bill of exchange was not legal tender, or even a negotiable instrument under the UCC. As such, neither Defendant was obligated to accept it in satisfaction of Mr. Nkemnji's loan.

As noted above, the UCC is a matter of state law. *See* 810 ILCS 5/1-103; *see also* dkt. 32 at *10 (Mr. Nkemnji observes that the UCC has been "enacted in all 50 states"). Although the United States' commercial dealing may often conform to the UCC, Mr. Nkemnji has identified no authority showing why the United States, or its agent Nelnet, is bound by the UCC's determination of legal tender. Nelnet informed Mr. Nkemnji that it may only accept payment "in the form of a bona fide check, money

order, or electronic payment." Compl. *53 (ex. I). Mr. Nkemnji has not identified any federal authority showing that Nelnet's statement was incorrect as a matter of law, and the Court does not believe that any such authority exists. *See Chavis v. T-Mobile US, Inc.*, No. A-23-CV-1513-DII-SH, 2024 WL 150734, at *4 (W.D. Tex. Jan. 11, 2024) ("[C]ourts have uniformly found that a 'bill of exchange' created by a private citizen cannot be used as legal tender in the United States.").

Second, the bill of exchange that Mr. Nkemnji sent to Nelnet does not meet the definition of a UCC negotiable instrument. Thus, even if Nelnet and the Department were bound to accept a UCC negotiable instrument as legal tender, they would not be obliged to accept Mr. Nkemnji's bill of exchange. UCC § 3-104 defines a negotiable instrument as "an unconditional promise or order to pay a fixed amount of money… if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; [and] (2) is payable on demand or at a definite time[.]"[2] 810 ILCS 5/3-104. The document that Mr. Nkemnji sent to Nelnet states: "PAY TO THE ORDER OF: U.S. Department of Education / Nelnet, Inc. … Amount: $ 92,267.62 USD … This instrument is lawful money on demand[.]" What is missing from this document is any indication of what Nelnet or the Department should do to receive the money in question. There is no accompanying bank information, money order, or anything other than the bare statement that the document constitutes "money on demand." But that statement does not make it so. Without any indication of where the recipient must demand the money from, the document is not "payable," and therefore does not constitute a negotiable instrument under the UCC—or any other kind of legal tender, for that matter. *See Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d 753, 759–60 (W.D. Va. 2007), *aff'd*, 282 F. App'x 260 (4th Cir. 2008) (finding plaintiff's bill of exchange invalid in part because it did not reference any legitimate source of funds and therefore did not constitute legal tender; and collecting similar cases); *see also Bull*

---

[2] The Court has omitted other definitional aspects of a negotiable instrument that are not relevant here.

*v. First Nat. Bank of Kasson*, 123 U.S. 105, 112 (1887) ("Undoubtedly it is the law that, to be negotiable, a bill, promissory note, or check must be payable in money.").

The Court is aware of the hardships that can be created by student loan debt, and particularly by the interest on such loans. Mr. Nkemnji is not alone in facing such hardships, and the Court does not believe that Mr. Nkemnji issued his bill of exchange in bad faith. Nevertheless, Mr. Nkemnji cannot eliminate his obligation to repay such debt with an invalid bill of exchange that is not actually payable on demand. Mr. Nkemnji's bill of exchange did not constitute legal tender, under federal law or the UCC, and neither Nelnet nor the Department had any obligation to accept it in satisfaction of Mr. Nkemnji's loan. As such, neither Defendant committed any breach, whether of contract or fiduciary duty, even assuming that relevant contractual and fiduciary duties existed. Additionally, no possible amendment can cure the fact that Mr. Nkemnji did not provide tender of payment to Defendants. *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (a court should not grant leave to amend "where the amendment would be futile" (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008))). As such, Mr. Nkemnji's complaint must be dismissed in its entirety and with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants each Defendant's motion to dismiss [11, 28] and dismisses Mr. Nkemnji's complaint in its entirety and with prejudice.

**IT IS SO ORDERED.**

Date: 2/23/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge